THE NASSAU BANK, Appellant, *v.* GEORGE B. YANDES, as Assignee of AUGUSTUS W. RITZINGER and FRANK L. RITZINGER, Respondent, Impleaded, etc.

*Interpleader — not allowed unless there exists a reasonable doubt as to whether the stakeholder would be safe in paying.*

On February 1, 1886, the firm of Ritzinger & Co., carrying on business at Indianapolis, voluntarily made a general assignment for the benefit of their creditors of all their property, of every kind and nature and wheresoever situated, to the defendant Yandes, which was duly recorded and filed. After the making of the assignment and the acceptance of the trust by the assignee, of which facts the plaintiff had notice, certain creditors of the firm brought actions against it in this State and obtained attachments, amounting to $4,731 65, against its property, on the ground that the members thereof were non-residents; these attachments were served upon the plaintiff, which held, at the time of the assignment and of the service of the attachments, commercial paper and shares of stock of an insurance company, owned by the firm, as collateral security for the payment of notes discounted by it for the firm.

After the indebtedness due to the plaintiff had been paid by the money received, from the payment of the paper held by the plaintiff, the assignees demanded from it the balance remaining in its hands and the stock, and upon its refusal to pay the same brought an action to recover them.

The plaintiff. claiming that the creditors who had procured attachments had thereafter recovered judgments in the actions in which they were issued, and that the sheriff had commenced an action against it to recover the same property, brought this action to compel the assignee and the sheriff to interplead.

*Held,* that the action could not be maintained, as the facts stated did not show that there was a reasonable doubt as to the right of the assignee to recover the property

That even if the assignment was made with an intent to hinder, delay or defraud the creditors of the assignors, it could not be attacked by either the sheriff or the attaching creditors simply as such.

*Thurber* v *Blanck* (50 N Y. 80) followed.

The old rule that the stakeholder is entitled to be removed beyond the shadow of all risk and that, in order to entitle him to the protection of the court, it is only necessary to establish that suits have been brought, or that claimants have threatened to bring them, no longer prevails, and it is now necessary to prove that such claims have some reasonable foundation and that there exists some reasonable doubt as to whether or not the stakeholder would be reasonably safe in the paying over the money. (Per Van Brunt, P. J.)

*Atkinson* v. *Manks* (1 Cow., 705) criticised.

APPEAL from a judgment dismissing the complaint, entered upon a trial of this action by the court without a jury.

On February 1, 1886, and for several years prior thereto, the defendants, Augustus W. Ritzinger and Frank L. Ritzinger, were partners in business at Indianapolis under the firm name of Ritzinger & Co. Prior to said date the said firm had procured the plaintiff, the Nassau Bank, to discount five notes for $5,000 each, and had given to the plaintiff to secure the payment of said five notes a quantity of commercial paper and 230 shares of the capital stock of the Franklin Insurance Company of the par value of fifty dollars each. On said February first the said firm at Indianapolis, aforesaid, made and delivered an assignment in writing, duly signed, sealed and acknowledged by each of them, by which they assigned and conveyed all their property of every kind and nature, and wheresoever situate, to the defendant George B. Yandes in trust for the benefit of the creditors of the assignors, equally and without preference. This assignment on said date was duly filed and recorded in the office of the clerk of Marion county, State of Indiana, and a true and correct copy of the assignment was duly filed in the office of the clerk of said Marion county. The defendant Yandes on the same day accepted said trust in writing. On the second of February the assignee took his oath of office and filed his official bond, duly executed and with sufficient sureties and duly approved.

The assignment was the free and voluntary act of the assignors, and was a voluntary or common law assignment as distinguished from a statutory or compulsory one, and was valid in the State where it was made and where the assignors and assignee then lived. The plaintiff had notice of said assignment on the day of its date. After the making and delivery of the assignment and the acceptance of the trust by the assignee, and the doing of the several acts above mentioned, divers creditors (defendants herein) of said firm brought actions against said firm in the State of New York, and obtained attachments against the property of the firm on the ground that the members thereof were non-residents of the State of New York. Said attachments were served on the plaintiffs between the 3d of February, 1886, and the 11th of February, 1886, inclusive, and amounted to the sum of $4,731.65. Prior to May 20, 1886, all the paper deposited as collateral to the five notes and other indebt-

edness of the firm of Ritzinger & Co. to the plaintiff had matured and had been collected, except some unpaid and protested paper, and on the 20th of May, 1886, all the indebtedness of every kind from said firm to the plaintiff had been paid. After payment of said indebtedness there remained in the hands of the plaintiff the sum of $5,856.03, the proceeds of the collaterals, the 230 shares of insurance stock and the protested notes hereinbefore mentioned. On said 20th of May, 1886, the defendant Yandes, as assignee, demanded from the plaintiff said cash, insurance stock and unpaid paper, and the plaintiff refused to comply with the demand, and on the twenty-fifth of said May said assignee brought an action in this court against the plaintiffs to recover said money, stock and protested paper. The attachment suits hereinbefore mentioned having gone to judgment (although upon no personal service on the defendants Ritzinger or appearance by them), the defendant Grant, as sheriff, began an action on or about July 20, 1886, against the plaintiff to recover the cash, protested notes and insurance stock mentioned in the complaint herein, as property which had been attached and levied upon as the property of said Ritzingers, and in said action said sheriff claimed possession of said cash and property as subject to said attachments, and that said attachments took precedence over the title of the assignee. Both of said actions were pending at the time of the commencement of this action. The plaintiff thereupon filed its bill of interpleader against the assignee, the sheriff and the attaching creditors, asking that the defendants might be called upon to interplead and settle their rights to said money and property amongst themselves, and the plaintiff be at liberty to pay said sum of money into court, and deposited said property in court. Upon the trial of said action, the court rendered judgment in favor of the defendants, and from such judgment this appeal is taken.

*George A. Strong,* for the appellant.

*Francis C. Barlow,* for the respondent Yandes.

VAN BRUNT, P. J. :

A stakeholder has always the right where there are conflicting claims to money or property in his hands, to go into court and ask

to deposit the money or property in court and leave the litigation of the questions to be carried on between the conflicting claimants.

The question which is presented upon this appeal is as to what it is necessary for the plaintiff to establish in order to show that there are conflicting claims. It is claimed upon the part of the plaintiff that all that is necessary for the stakeholder to establish is that suits have been brought or suits have been threatened by divers claimants to the same fund in order to entitle him to the protection of the court, and that the stakeholder is entitled to be removed beyond the shadow of risk in paying over the money where antagonistic rights are asserted. This view is undoubtedly sustained by the opinion of the court in the case of *Atkinson* v. *Manks.* (1 Cow., 705), where the court say, in substance, that where a party had forbidden a stakeholder to pay over money to another and threatened him with a suit, the stakeholder was not bound to exercise any judgment upon the subject. This rule, however, does not seem to be the prevailing rule now in reference to this matter. As all business is conducted with some risk, as every holder of money in the payment of it over always does so at some risk, the courts have receded from the rule that all that it is necessary to establish is that some claim had been presented and have held that it is necessary, in addition, to prove that such claim had some reasonable foundation, and that there was some reasonable doubt as to whether the stakeholder would be reasonably safe in the payment over of the money. It is claimed that because the defendant, the assignee, came to the plaintiff with an asserted voluntary general assignment, made in the State of Indiana, that this related to a fact which the bank could not know, and that the bank could not know whether the assignment was a valid and voluntary assignment by the laws of Indiana, and that, therefore, the plaintiff was not required to take the risk of the existence of all those facts. It has been held by the courts of this State that a verbal assignment of a balance of account in bank was valid and the bank was liable to suit to recover such balance by the assignee, and that the bank was required to take the risk of the existence of facts, the evidence of which rested exclusively, perhaps, with the assignee and claimant. (*Risley* v. *Phœnix Bank*, 83 N. Y., 318.) And, as has been observed, no business

can be conducted without hazard; the plaintiff, in the payment out of the money of its depositors upon their checks, takes a risk of the forgery of the check either in the maker's signature or in the filling in of the amount; in its transactions with its customers it runs a risk that the indorsements of commercial paper may also be forged, and it get no title, and therefore, the courts seem to have inclined to the rule that a mere pretext of a conflicting claim is not enough to show that the plaintiff is in any danger of loss from inability to determine to whom a debt should be paid. In the case of the *Baltimore & Ohio Railway Company* v. *Arthur* (90 N. Y., 234), it was held that the plaintiff, in an action of interpleader, must show that there is some question, as between the claimants to be tried, and that he will incur hazard in paying to either.

In the case of *Dorn* v. *Fox* (61 N. Y., 264) the court lay down the following rule: "The rule requiring that in actions of interpleader the plaintiffs should be in doubt as to which of the claimants is in the right, must be construed in a reasonable manner. It, of course, excludes all cases where the rights of parties are clearly settled. On the other hand, so long as a principle is still under discussion * * * it would seem fair to hold that there was sufficient doubt and hazard to justify the protection which is afforded by the beneficent action of interpleader."

It is not necessary to consider other authorities in order to show that the rule now is that a *reasonable* doubt must exist in order to justify the bringing of an action of interpleader, and that any doubt is not sufficient as was said in the case of *Atkinson* v. *Manks* (*supra*). We are, then, brought to the question as to whether there is any reasonable doubt as to the rights of the assignee of Ritzinger & Co., and of the attaching creditors of said firm, to said fund. It is the settled law of this State that the law of the place where a contract is made or to be performed is to govern as to the nature, validity, construction and effect of such a contract; and being valid in such place it is to be considered valid everywhere, with the exception of cases in which the contract is immoral or unjust, or in which the enforcing it in a State would be injurious to the rights, interests or convenience of such State or its citizens. (*Andrews* v. *Herriot*, 4 Cow., 510.) This rule is recognized in *Guillander* v *Howell* (35 N. Y., 657) and *Warner* v. *Jaffray* (96 id., 248). It

is true that in the case of *Guillander* v. *Howell* it was held that an assignment made in the State of New York of property then being situate in New Jersey, which was void under the laws of New Jersey, carried no title to the property in New Jersey. This conclusion was arrived at because the assignment in question contained preferences which were contrary to the law of New Jersey, and that as the property was within the exclusive jurisdiction of New Jersey, and as that State protected and regulated it, and as the laws of New York had no force in New Jersey as laws, but were by comity only enforced as to a transfer of personal property situated in New Jersey, except when injurious to her own citizens, the laws of New Jersey, when in conflict with the laws of New York in respect to the transfer of such property must control. The same principle was recognized in the case of *Warner* v. *Jaffray*, and these are exceptions to the rule which has long prevailed that personal property has no locality, but must be governed by the law of the domicile of its owner, therefore, it seems to be established beyond a reasonable doubt that the property of Ritzinger & Co. held by the Nassau Bank passed to the assignee by the assignment made in Indiana on the 1st of February, 1886.

The next question to be considered is, has the sheriff or the attaching creditors acquired any rights by virtue of their attachments and the levy thereon? The sheriff may collect and receive all debts, effects and things in action attached by him, and he may maintain any action or special proceeding in his own name, or in the name of the defendant, which is necessary for that purpose or to reduce to his actual possession an article of personal property capable of manual delivery, but of which he has been unable to obtain possession. This, however, gives neither the sheriff nor the attaching creditors any right to attack the assignment on the ground that it was made with intent to hinder, delay and defraud the creditors of the assignors. He can bring suits to collect debts and to reduce to possession personal property, the legal title to which is in the defendant in the attachment suit; but he cannot maintain an action to remove an obstacle to the attachment. (*Gibson* v. *National Park Bank*, 98 N. Y., 87; *Moseley* v. *Moseley*, 15 id., 334.) Title passes even by a fraudulent conveyance if executed, and, consequently, the title passed under the assignment in question

to the assignee, even though it may have been a fraudulent conveyance. The sheriff, therefore, the assignment having been proved to have been executed according to the laws of Indiana, and to have been valid there, could not, in an action here in aid of an attachment, attack the same upon the ground that it was made with fraudulent intent. (*Thurber* v. *Blanck*, 50 N. Y., 80.)

It is necessary that such an action as respects personal property should be brought by the judgment creditor, after his remedies at law have been exhausted. But it is claimed that the sheriff, in the actions which he has brought against the plaintiff, might show that the assignment was invalid even in Indiana, and that, by the finding of the court in this action, he is not precluded from so doing. This suggestion seems to be answered by the proposition which has been heretofore discussed, namely, that in order to entitle it to judgment in an action of interpleader, the plaintiff must show that there is reasonable ground to suppose that the title of one of the claimants is uncertain. There is no pretense in the proofs that there is any claim on the part of the sheriff that the assignment in question was not valid according to the laws of Indiana; and if there were such pretense, there is nothing whatever in the case to show that any such claim has the slightest foundation in law. The mere fact of what the sheriff may claim, or may not claim, does not raise the reasonable doubt required by the law, but such reasonable doubt must be supported by proof raising a question upon which the court may pass judicially.

The result, therefore, is that the judgment appealed from must be affirmed, with costs.

BRADY, J., concurred in the result.

DANIELS, J. :

The property in controversy in this action consists of an indebtedness of the plaintiff to the defendants Retzinger in the sum of $5,956.03 and 230 shares of insurance stock, together with three protested notes. This sum is the balance remaining owing by the plaintiff out of the proceeds of paper held as collateral by it, upon which a further sum had been collected sufficient to pay and extinguish the indebtedness owing to itself. This balance was a debt existing against the plaintiff, and when the attachments were issued,

which were mentioned in the complaint, it could be no otherwise seized than by the service of a copy of the attachments, with notice showing the property attached, as that was provided for by subdivision 3 of section 649 of the Code of Civil Procedure. The protested notes, if the creditors had been desirous of seizing them under the attachments, might have been actually taken by the sheriff; but as they do not appear to have been of any actual value no attempt was made to levy by the attachments upon them in that manner; neither did the sheriff attempt to make any actual seizure of the 230 shares of stock. But for the purpose of attaching this property, as well as the indebtedness of the bank, copies of the attachments, with the notices allowed to be served by this section of the Code, were served upon the plaintiff, and it is upon the judgments recovered in the actions in which the attachments were issued, and without any personal service of the summons upon the debtors, that the sheriff has brought his action against the plaintiff to recover this balance of the indebtedness and the other property mentioned.

But as the debtors themselves executed and delivered a general assignment of their property for the benefit of their creditors, in the manner in which that was authorized to be done by the laws of the State of Indiana, before either of the attachments had been issued, the indebtedness now in controversy did not become subject to the attachments. So much of the property as was capable of manual delivery was required to be taken into the sheriff's actual custody to constitute an attachment or seizure of it by subdivision 2 of section 649 of the Code. No such seizure was made, either of the protested notes or of the shares of stock. As to those articles the sheriff accordingly acquired no lien upon them under the attachments, and he had no title whatever upon the facts, as they were made to appear beyond controversy, upon which he could maintain any action against the plaintiff. The attachments were likewise entirely inoperative upon the balance of the indebtedness owing by the bank to the debtors, for after an assignment of such an indebtedness has been made it is incapable of being seized under attachments issued against the assignor. This was considered very fully in *Thurber* v. *Blanck* (50 N. Y., 80), and it resulted in the determination that property incapable of manual delivery, after its assignment, could not be reached by its seizure through the medium

of an attachment, but that the remedy of the creditor to recover it was by a proceeding in equity to set aside the assignment or transfer when that might be done, after the recovery of a judgment, and the issuing and return of an execution upon it. The same view was adopted and maintained in *Smith* v. *Longmire* (24 Hun, 257), and it was so far also followed in *Bates* v. *Plonsky* (28 Hun, 112).

These authorities all agree in maintaining the inability of an attaching creditor to attach the property claimed to be that of his debtor, consisting of choses in action incapable of a manual delivery, when they have been previously assigned and transferred by him to another party, and being incapable of seizure under the attachments, the sheriff has no authority for bringing or maintaining an action against the debtor for the recovery of the amount of the debt, for it is only when the debt itself may have been attached that the sheriff has been authorized to maintain an action for its recovery by virtue of subdivision 4 of section 708 of the Code of Civil Procedure. Neither as to the protested notes, inasmuch as they were not actually attached or taken into the sheriff's custody, nor the shares of insurance stock which might have been seized in the same manner, nor the balance of the indebtedness due from the bank, did the sheriff acquire any right to recover in the action brought by him against the plaintiff. His inability to maintain the action, and his failure to secure a legal seizure of any part of the property or indebtedness in dispute, appear clearly and beyond controversy upon the face of his proceedings. As to the effect of what has been done by him no legal uncertainty remains under the construction which has been given to the provisions of the Code by the authorities which have been cited. The plaintiff was, therefore, in no legal danger whatever, and subjected to no possible risk from the proceeding or the action taken by the sheriff, and it accordingly was not in a position in which it could require either the sheriff or the creditors in the attachments to be interpleaded with the assignee under the general assignment for the determination of the right to or the disposition of this property.

The title of the assignee, as it has been established and shown in the opinion of the presiding judge, is free from legal dispute, and neither the money or property can justly be withheld from him by

the plaintiff as long as it so plainly appears that the adverse claim is entirely devoid of legal foundation. If the creditors represented in the attachments can maintain a paramount right to this indebtedness, that can only be done after judgments recovered by them against their debtors and the issuing and return of executions, and the successful impeachment of the assignment through the intervention of creditors actions. And as neither the debtors nor the assignee were within this State it follows that this remedy, even of the attaching creditors, must be pursued where personal service of process can be made upon them, or their appearance can otherwise be enforced in actions commenced against them. Until the title of the assignee shall be set aside or superseded in this or some other legal manner, or a lawful seizure shall be made, he is entitled to the balance of the indebtedness and property in dispute, and neither the attaching creditors nor the sheriff acting in their behalf have even a colorable claim upon which they can resist the right of the assignee to this balance and the property.

The judgment in the case, as directed by the presiding judge, in his opinion, should, therefore, be affirmed.

BRADY, J., concurred in result.

Judgment affirmed, with costs.