DAVID H. CRANE, Respondent, *v.* MARTHA McDONALD, Appellant.

*Court of Appeals, March 11, 1890.*

Affirming 41 Hun, 640.

1. *Interpleader.*—Where a person is, without collusion, subject to a double demand to pay an acknowledged indebtedness, he is entitled to an action of interpleader, to relieve him from the risk of deciding who is entitled to the money.

2. *Same. Reasonable doubt.*—To justify him in bringing such action, it is not necessary for him to decide, at his peril, either close questions of fact or nice points of law, but it is sufficient, if there is a reasonable doubt as to the rights of the conflicting claimants.

3. *Same.*—The plaintiff in such an action has the right to rely upon what is claimed to be true, in case he acts in good faith.

4. *Same. Privity.*—Where the adverse titles of the claimants are both derived from a common source, it is a sufficient privity to authorize an interpleader.

See Note at end of case.

Appeal from a judgment of the general term of the supreme court, affirming a judgment entered upon the decision of the court.

The plaintiff held in his hands the sum of $808 then due from him upon a contract that he had entered into with one Jennie L. Graves. At the same time the defendant, Martha McDonald, who is the mother of said Jennie L. Graves, claimed said sum as the assignee of the latter's interest in said contract, and had brought an action against the plaintiff to recover the same.

The defendant, George E. Goodrich, as administrator, etc., of Milo Goodrich, deceased, also claimed said sum on the ground that he had an attorney's lien thereon and had obtained an attachment pursuant to which the sheriff of Cortland county had levied upon the claim in question and had forbidden the plaintiff to pay said money to Mrs. McDonald or to any one except himself. The plaintiff was ready to pay it into court to abide the event of any action between the defendants, and was willing to pay it to either upon being indemnified, and had so notified them, but both had refused to indemnify him. He could not without hazard pay the same to either and he was not in collusion with either, but in good faith desired that they should settle the matter between themselves.

Before this action was commenced he paid the amount involved into court, pursuant to an order made at special term, to abide its decision as to who was entitled thereto.

The court found as a conclusion of law that this was a proper case for an interpleader and for an injunction perpetually restraining Mrs. McDonald from the further prosecution of the action brought by her against the plaintiff.

The defendant, McDonald, alone appealed from the judgment of the special term.

*W. B. French* and *Matthew Hale*, for appellant.

*A. P. Smith*, for respondent.

VANN, J.—The material allegations in a bill of interpleader, according to an early decision by the court of errors, are · 1. That two or more persons have preferred a claim against the complainant. 2. That they claim the same thing. 3. That the complainant has no beneficial interest in the thing claimed, and 4, that he cannot determine, without hazard to himself, to which of the defendants the thing belongs. Atkinson v. Manks, 1 Cow. 691, 703. It was also held in that case that the complainant should annex to his bill an affidavit that there is no collusion between him and any of the parties, and that he should bring the money or thing claimed into court so that he could not be benefited by the delay of payment which might result from the filing of his bill. This method of procedure still prevails. Dorn v. Fox, 61 N. Y. 268. The plaintiff insists that he has conformed to the practice thus laid down in every particular, while the appellant contends that the complaint is not sufficiently specific with reference to the claims of the defendants, and that no privity is shown between them in relation to their respective demands.

The complaint describes the claim of the defendant McDonald more fully than that of the defendant Goodrich, because the former had sued him and had thus furnished him with a definite description. While the claim of the latter was not clearly nor fully described, enough was set forth to show that it was not a mere pretext, but that it apparently rested upon a reasonable and substantial foundation. If the appellant desired that it should be made more definite and certain, her remedy was by motion under § 546 of the Code of Civil Procedure. Neftel v. Lightstone, 77 N. Y. 96. Upon the trial, according to the old chancery practice, as it appeared by the answers of the defendants that each claimed the fund in dispute, no other evidence of that fact was required to entitle the plaintiff to a decree. Balchen v. Crawford, 1 Sandf. Ch. 380.

In this case, however, the point was not left to be de-

termined by the pleadings, but evidence was introduced upon the subject, and it appeared that at least a fair doubt existed as to the rights of the conflicting claimants. It was not necessary for the plaintiff to decide, at his peril, either close questions of fact or nice questions of law, but it was sufficient if there was a reasonable doubt as to which claimant the debt belonged. When a person, without collusion, is subjected to a double demand to pay an acknowledged debt, it is the object of a bill of interpleader to relieve him of the risk of deciding who is entitled to the money. If the doubt rests upon a question of fact that is at all serious, it is obvious that the debtor cannot safely decide it for himself, because it might be decided the other way upon an actual trial, while if it rests upon a. question of law, as was said in Dorn *v.* Fox, 61 N. Y. 264, "so long as a principle is still under discussion, * * * it would seem fair to hold that there was sufficient doubt and hazard to justify the protection which is afforded by the beneficent action of interpleader." Although the claim of Mr. Goodrich has since been held untenable by this court, Goodrich *v.* McDonald, 112 N. Y. 157; 20 N. Y. State Rep. 509; it does not follow that no doubt existed when this action was commenced, because the supreme court, both at special and general term, held that it was valid and attempted to enforce it. This conflict, in the decisions of the courts, shows that the adverse claims of the defendants involved a difficult and doubtful question, and is a conclusive answer to the contention of the appellant that the plaintiff did not need the aid of an action of this character. Was it possible for him to safely decide a point so intricate as to cause those learned in the law to differ so widely?

The law did not place so great a responsibility upon him, but provided him with a remedy to protect himself against the double liability, or, to speak more accurately, against a double vexation on account of one liability. Dorn *v.* Fox, *supra;* Caulkins *v.* Bolton, 31 Hun, 458; S. C., 98 N. Y.

511; Johnson *v.* Stimmel, 89 Id. 117; Schuyler *v.* Pelissier, 3 Edw. Ch. 191; Bedell *v.* Hoffman, 2 Paige, 199; M. & H. R. R. Co. *v.* Clute, 4 Id. 384; Bell *v.* Hunt, 3 Barb. Ch. 391; Badeau *v.* Tylee, 1 Sandf. Ch. 270; German Ex. Bank *v.* Comm'rs of Excise, 6 Abb. N. C. 394; B. & O. R. R. Co. *v.* Arthur, 10 Id. 147; Pomeroy Eq. Jur., §§ 1320–1327; Story Eq. Jur., §§ 800–824.

It required, however, that he should act in good faith and he insists that he furnished ample evidence upon that question. He offered to pay the money to Mrs. McDonald if she would indemnify him against the claim of Mr. Goodrich, but she refused to do so and commenced an action to recover the amount involved. A like offer to Mr. Goodrich upon the condition that he should furnish indemnity was declined and legal proceedings were threatened. Neither defendant would recede from the position thus taken, but both persisted in their respective demands. The plaintiff, thereupon, paid the money into court pursuant to its order and then commenced this suit, annexing to his complaint, in addition to the usual verification, an affidavit stating that the action was brought in good faith and without collusion with either defendant, or with any person " in their behalf." It did not appear that he had attempted to favor the position of either claimant. These facts, with others appearing in the record, furnished adequate support of the conclusion of the trial judge that the plaintiff acted in good faith.

The appellant contends that no such privity was shown to exist between the defendants as to authorize the plaintiff to bring an action to cause them to interplead.

While the early authorities were exacting upon this subject, many of the later cases have been less rigid, and some have ignored it altogether. The doctrine seems to have been abrogated in England, partly by statute and partly by judicial decisions. Mr. Pomeroy, referring to the rule, says that, " It is a manifest imperfection of the equity jurisdiction that it should be so limited. A person may be and

is exposed to danger, vexation and loss from conflicting independent claims to the same thing, as well as from claims that are dependent, and there is certainly nothing in the nature of the remedy which need prevent it from being extended to both classes of demands." Pomeroy Eq. Jur., § 1324, note.

Our statutory interpleader by order apparently does not recognize the doctrine. Code Civil Procedure, § 820. A somewhat similar statute in England led the courts of that country to declare that they no longer felt bound, even in an equity action, by the narrow principle previously laid down. Attenborough v. London, etc., Dock Co., L. R., 3 C. P. Div. 450. It is not necessary, however, for us to decide whether the rule still exists, or to what extent it exists in this state, because, according to the most exacting authorities, where the adverse titles of the claimants are both derived from a common source, it is sufficient to authorize an interpleader. Such is the case under consideration. Mrs. Graves, as the owner of the contract in question, and of the money that was invested therein, was the common source of title to both defendants. The title of Mrs. McDonald, as claimed, for it is the claim only that is here material, was by assignment of the legal title from Mrs. Graves, while the claim of Mr. Goodrich was by an equitable assignment from the same person. Each defendant acknowledging the original title of Mrs. Graves, claimed the same debt under her, and the title of each was therefore derivative, as that word is used with reference to this subject. Pomeroy Eq. Jur., § 1327.

The plaintiff held the money to discharge the debt substantially as a stakeholder, having no beneficial interest therein, and being under no independent liability to either claimant. He does not deny the title of Mrs. Graves, but, affirming it, places himself upon the uncertainty as to which of the two persons claiming from her is entitled to receive the fund.

Whether the claim of Mr. Goodrich was based on a lien by contract, or a lien by attachment, or both, it originated with Mrs. Graves, who, at one time, owned all that was claimed by either defendant. His lien had been sanctioned by a decree of the supreme court nearly a year before the trial of this action, and although that judgment was subsequently reversed, it was still in force when the judgment now under review was rendered.

The lien of the attachment, as it was claimed to exist, arose after the covenant to pay the sum in question was entered into by the plaintiff, and, although that lien also was subsequently held invalid, it was sufficient to support an action of interpleader, and is a complete answer to the contention of the appellant that this suit was not regularly brought owing to the contractual relation between herself and the plaintiff.

If the actual truth was a defense to a bill of interpleader, the argument of the appellant would be conclusive, but, necessarily, the plaintiff in such an action has the right to rely upon what is claimed to be true, as otherwise the remedy would be of no value.

After carefully examining all of the exceptions involving questions of law, we think that none of them were well taken, and that the judgment appealed from should be affirmed, with costs.

All concur, except FOLLETT, Ch. J., not sitting.

NOTE ON INTERPLEADER.

The action of strict interpleader, or the suit in the nature of interpleader, and the mode of procedure in them, are borrowed or continued from the former practice. The Code has provided an additional remedy by motion for an interpleader.

Section 820 of the present Code reads as follows:

§ 820.   A defendant, against whom an action to recover upon a con-

tract, or an action of ejectment, on an action to recover a chattel, is pending, may, at any time before answer, upon proof, by affidavit, that a person, not a party to the action, makes a demand against him for the same debt or property, without collusion with him, apply to the court, upon notice to that person and the adverse party, for an order to substitute that person in his place, and to discharge him from liability to either, on his paying into court the amount of the debt, or delivering the possession of the property, or its value, to such person as the court directs. The court may, in its discretion, make such an order.

*Essential. Collusion.*—The material allegations in a bill of interpleader, according to an early decision by the court of errors, are: (1. ) That two or more persons have preferred a claim against the complainant. (2.) That they claim the same thing. (3.) That the complainant has no beneficial interest in the thing claimed. And (4), that he cannot determine, without hazard to himself, to which of the defendants the thing belongs. Crane *v.* McDonald, 118 N. Y. 648; Atkinson *v.* Manks, 1 Cow. 691. It was also held in the latter case that the complainant should annex to his bill an affidavit that there is no collusion between him and any of the parties, and that he should bring the money or thing claimed into court, so that he could not be benefited by the delay of payment which might result from the filing of his bill. This mode of procedure still prevails. Crane *v.* McDonald, *ante;* Dorn *v.* Fox, 61 N. Y. 268.

According to the old chancery practice, where it appeared by the answers of the defendants that each claimed the fund in dispute, no other evidence of that fact was required to entitle the plaintiff to a decree of interpleader. Balchen *v.* Crawford, 1 Sandf. Ch. 380.

*Reasonable doubt.*—It is not necessary for the plaintiff to decide, at his peril, either close questions of fact or nice questions of law, but it is sufficient if there is a reasonable doubt as to which claimant the debt belongs. Crane *v.* McDonald, *ante.* When a person, without collusion, is subjected to a double demand to pay an admitted debt, it is the object of a bill of interpleader to relieve him from the risk of deciding who is entitled to the money. If the doubt rests upon a question of fact that is at all serious, it is obvious that the debtor cannot safely decide it for himself, for the reason that it might be decided the other way upon an actual trial; while, if it rests upon a question of law, it would seem fair, so long as a principle is still under discussion, to hold that there is sufficient doubt and hazard to justify the protection which is afforded by the beneficent action of interpleader. Id.; Dorn *v.* Fox, *ante.* Though a claim is subsequently held untenable by the court of appeals, it does not follow that no doubt existed at the time the action was commenced, especially where it was held valid

both at special and general terms. Such conflicts, in the decision of the courts, shows that the adverse claims of the defendants involve a difficult and doubtful question, and that the plaintiff needs the aid of an action of this character. Id.

The law does not place so great a responsibility upon him, but provides him with a remedy to protect himself against the double liability; or, to speak more accurately, against a double vexation on account of one liability. Id.; Dorn v. Fox, ante; Caulkins v. Bolton, 31 Hun, 458; S. C. 68 N. Y. 511: Johnston v. Stimmel, 89 Id. 117; Schuyler Pelissier, 3 Edw. Ch. 191; Bedell v. Hoffman, 2 Paige, 199; M. & H. R. R. C. Co. v. Clute, 4 Id; 384; Bell v. Hunt, 3 Barb. Ch. 391; Badeau v. Tyldc, 1 Sandf. Ch. 270; German Ex. Bank v. Com'rs of Excise, 6 Abb. N. C. 364; B, & O. R. R. Co. v. Arthur, 10 Id. 147.

It is required, however, that the plaintiff shall act in good faith and evidence that he has offered to pay to either party, if he would indemnify him against the other, and been refused by both parties, shows such good faith. Crane v. McDonald, ante. It seems that privity need not be shown to exist between the defendants, in order to entitle the plaintiff to bring an action to cause them to interplead. Id.

While the early authorities were exacting upon this subject, many of the later cases have been less rigid, and some have ignored it altogether. The doctrine seemed to have been abrogated in England, partly by statute and partly by judicial decisions. Our statutory interpleader by order apparently does not recognize the doctrine. § 820 of the Code. A somewhat similar statute in England led the courts of that country to declare that they no longer felt bound, even in an equity action, by the narrow principle previously laid down. Attenborough v. London, etc., Dock Co., L. R. 3 C. P. Div. 450. According to the most exacting authorities, where the adverse titles of the claimants are both derived from a common source, it is sufficient to authorize an interpleader. Crane v. McDonald, ante.

In this case, an action of interpleader was brought, and, at its commencement, the plaintiff held in his hands the sum of $808, then due from him upon a contract that he had entered into with one Jennie L. Graves. At the same time the defendant, Martha McDonald, who is the mother of said Jennie L. Graves, claimed said sum as the assignee of the latter's interest in said contract, and had brought an action against the plaintiff to recover the same. The defendant, George E. Goodrich, as administrator, also claimed said sum on the ground that he had an attorney's lien thereon, and had forbidden the plaintiff from paying said money to Mrs. McDonald, or to any one except himself. Plaintiff was ready to pay the money into court to abide the event of any action between the defendants, and was willing to pay it to either

upon being indemnified, and had so notified them, but both had re-fused to indemnify him. He was not in collusion with either defend-ant. Before the present action was commenced, he paid the amount involved into court, pursuant to an order made at special term, to abide its decision as to whom was entitled thereto. From this order the defendant McDonald appealed to the general term, and then to the court of appeals.

Mrs. Graves, as the owner of the contract in question, and of the money that was invested therein, was the common source of title to both defendants. The title of Mrs. McDonald was by assignment of the legal title from Mrs. Graves, while the claim of Mr. Goodrich was by an equitable assignment from the same person. Each defendant, acknowledging the original title of Mrs. Graves, claimed the same debt under her, and the title of each was therefore derivative, as that word is used in reference to this subject. And although the lien of Mr. Goodrich by attachment was held invalid after the rendition of the judgment of interpleader, it was operative at the commencement of the action, and sufficient to support the action of interpleader.

A stake-holder has always a right, where there are conflicting claims to money or property in his hands, to go into court, and ask to deposit the money or property in court and leave the litigation of the questions to be carried on between the conflicting claimants. Nassau Bank v. Yandes, 44 Hun, 55. It was formerly held that all that was necessary for him to establish was that suits had been brought, or threatened, by divers claimants to the same fund, in order to entitle him to the protection of the court, and that the stake-holder was entitled to be removed beyond the shadow of risk in paying over the money, where antagonistic rights were asserted. Id. This view is sustained by the case of Atkinson v. Manks, ante, where the court, in substance, said that, where a party had forbidden a stake-holder to pay over money to another and threatened him with a suit, the latter was not bound to exercise any judgment upon the subject. This does not seem to be the prevailing rule now in reference to this matter. The courts have re-ceded from the doctrine that all that it is necessary to establish is that some claim has been presented, and have held that it is necessary, in addition, to prove that such claim has some reasonable foundation, and that there is some reasonable doubt as to whether the stake-holder will be reasonably safe in the payment over of the money. Id.

It has been held by the courts of this state that a verbal assignment of a balance of account in bank was valid and the bank was liable to a suit to recover such balance by the assignee, and that the bank was required to take the risk of the existence of facts, the evidence of which rested exclusively, perhaps, with the assignee and claimant. Risley v. The Phœnix Bank, 83 N. Y. 318. The bank, in paying out the money

of its depositors upon their checks, takes a risk of the forgery of the check either in the maker's signature or in the filling in or the amount; in its transactions with its customers, it runs a risk that the indorsements of commercial paper may also be forged, and it gets no title; and, therefore, the courts seem to have inclined to the rule that a mere pretext of a conflicting claim is not enough to show that the bank is in any danger of loss from inability to determine to whom a debt should be paid. Nassau Bank *v.* Yandes, *ante.*

In the case of The B. &. O. Ry. Co., *v.* Arthur, 90 N. Y. 234, it was held that the plaintiff, in an action of interpleader, must show that there is some question, as between the claimants, to be tried, and that he will incur hazard in paying to either party.

In the case of Dorn *v.* Fox, *ante,* the following rule was laid down by the court: "The rule requiring that, in actions of interpleader, the plaintiff should be in doubt as to which of the claimants is in the right, must be construed in a reasonable manner. It, of course, excludes all cases where the rights of parties are clearly settled. On the other hand, so long as a principle is still under discussion, it would seem fair to hold that there was sufficient doubt and hazard to justify the protection which is afforded by the beneficent action of interpleader."

The rule now is that a reasonable doubt must exist in order to justify the bringing of an action of interpleader, and that any doubt is not sufficient as was held in the case of Atkinson *v.* Manks, *ante.*

It has been uniformly held that the provision of § 820 of the Code for interpleader by order is a substitute for the old action of interpleader, and is governed by the same principles. Pustet *v.* Flannelly, 60 How. 67. It appeals, as the closing paragraph of the section indicates, to the equitable discretion of the court. According to all the cases reported, such an application ought not to be granted, where it clearly appears on the face of the papers that the claim of the third party is frivolous and without validity. Id.; Trigg *v.* Hitts, 17 Abb. 436; Johnston *v.* Lewis, 4 Abb. N. S. 150; M. & H. R. R. Co. *v.* Clute, 4 Paige, 384; Shaw *v.* Coster, 8 Id. 347; Wilson *v.* Duncan, 8 Abb. 354; Doran *v.* Fox, *ante.*

Where the defendant cannot determine without hazard to itself to which of the parties claimant the subject-matter of the litigation belongs, he is entitled, under § 820 of the Code, to be relieved from the litigation by depositing the money in court, so that the two hostile claimants may be allowed to litigate their respective claims. Norton *v.* Union Trust Co., 27 W. Dig. 22.

In this case a deposit was made with defendant by a trustee. After his death, actions to recover the fund were brought by his executrix and by one claiming to be beneficially entitled to the fund. And it was held that an interpleader was proper.

In Koenig v. N. Y. L. Ins. Co., 47 Hun, 634, the insurance moneys. in the hands of the defendant were conceded to be due to the children of Therese Sand. The plaintiffs claim to be her only lawful children. Bertha Koehler was substituted as defendant by the order from which the appeal herein is taken and claims that she, also, is a lawful child of Therese Sand, and demands that she be allowed to share in the distribution of the insurance moneys. The plaintiffs deny her legitimacy and contend that, inasmuch as she was not born in wedlock, there is no reasonable doubt that they, and they alone, are entitled to the proceeds of the insurance policy. There was a substantial controversy upon the question of legitimacy, and enough appears to indicate that the claim of Bertha Koehler could not safely be disregarded by the insurance company. The company was not acting in collusion with the claimant.

And it was held on a motion to interplead the claimants that the question of illegitimacy could not properly be determined on this. motion; and that, as to the identity of the debt alleged to be in dispute, it is sufficient if the claimants' demand is one which must be satisfied out of the fund, even though he does not claim the whole. Id.; Barnes v. Mayor, 27 Hun, 236; Suart v. Welch, 4 Mylne & Craig, 316.

Where the substituted defendant appears in no event to be entitled to more than a part of the amount in controversy, the plaintiff, upon making a proper application to the court, should be allowed to receive the remainder without awaiting the termination of the suit.

In Smith v. Emigrant Ind. Savings Bank, N. Y. City Court, 1888, an action at law was brought to recover money deposited by plaintiff with the defendant. A stranger to the defendant claims, by a notice served to be entitled to said money, and has forbidden any payment thereof by said bank to the plaintiff. The bank asked for an order of interpleader under § 820 of the Code. And it was held that this was a proper case for a motion to interplead under said section. See Norton v. Union Trust Co., ante; Brugemann v. Metropolis Bank, 1 City Court, 86; Wehle v. Bowery Savings Bank, 8 J. & S. 98; Barnes v. Mayor, ante. The bank is put upon inquiry by such notice, and the fund in question may be impressed with a trust of latent ownership, which the defendant cannot disregard after notice received. Smith v. Emigrant Ind. Sav. Bank, ante; Baker v. N. Y. Nat. Ex. Bank, 100 N. Y. 34. In the latter case, it was held that a bank having notice cannot appropriate the money to its depositor, even on his consent, to the prejudice of the actual cestui que trust.

By § 820 of the Code, it is provided that a defendant, against whom an action to recover a chattel is pending at any time before answer, upon proof by affidavit that a person not a party to the action makes.

a demand against him for the same property, without colldsion with him, may apply to the courts, upon notice to that person and the adverse party, for an order to substitute that person in his place and to discharge himself from liability to either party by delivering possession of the property or its value to such person as the court directs. Dreyfus v. Casey, 52 Hun, 95. And the section further provides that the court may, in its discretion, make such an order. This section was considered and interpreted in Bowery Nat. Bank v. The Mayor, 42 Hun, 659; and it was there declared that the right of the defendant to succeed in an application made under its provisions was not restricted to demands which might probably be made successfully against the subject of the controversy. It is only necessary for the defendant to show, in order to avail himself of its provisions that a person not a party to an action, makes a demand for the same debt or property, without collusion with him. The section applies only to proceedings by motion and by the defendant. Id.; B. & O. R. R. Co. v. Arthur, *ante.*

The effect of the section is to create a distinction between a proceeding, under its provisions, and an action in the nature of an interpleader, for the reason that in the latter it is necessary to show that the claim interposed is substantial and will probably be successful, in order to entitle the plaintiff to maintain his action. Dreyfus v. Casey, 52 Hun, 95; Nassau Bank v. Yandes, *ante.* The decision in Vosburg v. Huntington, 15 Abb. 254, is not in conflict with this view; but if, by any interpretation, it may be regarded as in conflict, it is overruled by the case of the Bowery Sav. Bank v. The Mayor, *ante,* and it does not consider the precise question here discussed as paramount in importance.

An order entered upon the application, which does not state what shall be done with the property during the pendency of the action, is deficient, but this omission may be supplied on a motion to amend, and does not affect the propriety of the order allowing the substitution. Dreyfus v. Casey, *ante.*

By § 820 of the Code, the right of the defendant to succeed in an application for an order of interpleader has not been restricted to demands which may probably be made successfully against the subject of the controversy; but what the legislature has required is, that where a person not a party to the action makes a demand for the same debt, without collusion with the defendant, the latter may apply to the court upon notice to the claimant and the adverse party, for an order to substitute the claimant in his or its place, and to discharge the defendant from liability on paying into court the amount of the debt, or delivering the possession of the property or its value, to such person as the court directs. Bowery Nat. Bank v. The Mayor, *ante.*

23

This is all which the law has required to be proven to authorize the making of the order. Id.

In this case, an action was brought by the plaintiff, as assignee of the late sheriff of the county of New York, to recover the sum of $5,485.75, for services rendered by the sheriff for which he was entitled to payment from the city of New York. The city did not deny its liability to pay this sum of money upon the account and for the services rendered by the sheriff. But other parties claimed the money; and a motion was made to permit the city to pay the money into court and for an order bringing in the other parties as defendants to contest and determine their conflicting claims to the fund in controversy.

It was made to appear that there was no collusion between the claimants and the city, And it was held that, under the language of § 820 of the Code, as well as the construction given to it in Barnes *v.* The Mayor, *ante*, the city was entitled to the order; and that the right to the order was not excluded by the fact that the apparent right to the money may have been transferred to the plaintiff, for the adverse claimants were entitled to contest the legality of the transfer upon a trial, before it could be determined that they should receive no part of this fund. It does not follow that, because the plaintiff has received a former agreement entitling it to this fund prior to the rendition of the services, or a copy of the sheriff's account after such account has been rendered, it will be able to succeed in maintaining its rights against the adverse claims. But this is a matter which can only be ascertained after a trial shall have taken place. And as the defendant has no interest in that trial and claims no part of the fund itself, it should not be required to contest with each of the claimants the priority or rights to this sum of money. The case of the Baltimore, etc., R. R. Co. *v.* Arthur, *ante*, does not refer, in its decision, to the points now in controversy. The interpleader was there denied by reason of the fact that there was a contest as to the legality of the debt, for a part of the demand in suit.

The authorities distinguish between a strict bill of interpleader and a bill in the nature of an interpleader. Dorn *v.* Fox, *ante*.

These are governed by rules differing to some extent. In the former the following ingredients are necessary: (1.) Two or more persons must have preferred a claim against the plaintiff. (2.) They must claim the same thing, whether it is a debt or duty. (3.) The plaintiff must have no beneficial interest in the thing claimed. (4.) It must appear that he cannot determine, without hazard to himself, to which of the defendants the thing, or right, belongs. (5.) There must also be an offer to bring the money or thing in dispute into court.

In the bill, in the nature of an interpleader, the same strictness is not required. Other elements of an equitable nature may enter into

the case, and the jurisdiction of the court may be derived from them.

The distinction is well pointed out in M. & H. R. R. v. Clute, 4 Paige, 385. Id.

Where an action is brought upon the theory of a strict bill of interpleader, ignorance of the respective rights of the claimants must be shown, or, at least, it must appear that there is some doubt to which of such claimants the debt or duty belongs, so that he cannot safely pay or render it to one without some risk of subsequently being made liable for the same debt to the other claimant. M. & H. R. R. v. Clute, ante; Dorn v. Fox, ante.

In the latter case, an unoccupied farm, situate partly in each of two adjoining towns, and was assessed and taxed in both towns, and warrants for the collection of the taxes were placed in the hands of the respective town collectors. And it was held that an action in the nature of a bill of interpleader may be maintained by the owner and occupant against the two collectors for the purpose of determining in which town his farm was properly taxable. The owner could not have safely rendered the tax to one, without some risk of subsequently being made liable to pay the tax to the other, collector. Though the amount of the tax is not the same in the two towns, the duty is, however, the same, as it grows out of the statutory power of assessors to levy taxes. The owner must in such case pay into court the largest sum assessed upon him, so as not to violate the settled rule in this class of cases, that he cannot litigate any part of the claim of either defendant. Dorn v. Fox, ante. This action was brought in 1870, and at that time there was a sufficient doubt upon the question as to the effect of a decision of assessors that facts exist giving them jurisdiction, to authorize the maintenance of an action as one of strict interpleader.

In such a case the plaintiff may show that, by reason of conflicting claims, his property is in danger of being sacrificed. He may insist that he has an equitable right to have relief from the effects, on his property, of an illegal assessment. If the statute makes the tax a lien upon his land, he may urge that it is a cloud on his title. If it is personal property, he may assert that it is in danger from the rival claims of the collectors. Though the plaintiff may sue the assessor for his wrongful act, the law does not confine him to so uncertain a remedy. Complete justice may be done by bringing both claimants before the court, ordering the amount of the lawful tax to be paid over to the collector who turns out to be in the right, restraining the rival collector from further proceedings, and declaring the unauthorized tax, as well as the warrant for its collection, illegal and void.

The case of Redfield v. The Supervisors, 1 Clarke, 42; affirmed by the chancellor in 3 Ch. Dec. 92, clearly support these propositions.

In this case, a person who was taxed in two different places for what was claimed to be the same property, filed a bill of interpleader to compel a settlement of the right of taxation as between the parties assuming it. It was filed against the supervisors of the two counties, before they had issued their warrants for its collection. In this respect, the case differed from the case of M. & H. R. R. Co. *v.* Clute, *ante,* and Thomson *v.* Ebbetts, 1 Hopk. 272, since, in these cases, the bill was filed against the collectors after the assessment rolls had been placed in their hands. But the court held that this difference had no effect on the principle.

In M. & H. R. R. Co. *v.* Clute, *ante,* an action of interpleader was brought by a party taxed in two different towns for the same property, which was liable to be taxed only once. The court held that the only ground on which it assumes jurisdiction in a strict bill of interpleader is the danger of injury to the plaintiff from the doubtful rights and conflicting claims of the several defendants between themselves. The plaintiff must accordingly state his own situation in reference to the fund in question, or as to the duty to be performed, and the nature of the claim of the defendants; and if, on this showing, there can be no doubt, the party who is entitled to the debt is not to be subjected to the delay and expense of a chancery suit. On the other hand, where there are other grounds of equitable relief, he may file a bill in the nature of an interpleader against both of the claimants. So it was also held in Thomson *v.* Ebbetts, *ante,* where an action was brought by a tax-payer to compel the collectors of different towns, in which the plaintiff was taxed for the same property, to interplead.

In Mathot *v.* North River Bank, 16 N. Y. C. P. 314, it was held that a bank sued upon a check, and an assignment of the drawer's account to that extent, will not be permitted to substitute in its place as defendant an attaching creditor who served notice of his attachment upon the same day that the deposit to the drawer's account was made, upon the claim of such defendant that it does not know which occurred first, the making of the deposit, or the levy of the attachment.

In Yonkers Gaslight Co. *v.* Taylor, 25 W. Dig. 220, the plaintiff entered into a contract with defendant Young to lay gas pipe through a street in Yonkers. Young thereafter borrowed some money from Taylor to pay for labor under said contract, and at the same time gave Taylor an order on plaintiff, assigning to him an amount equal to the borrowed money then due or to grow due on said contract. This order was accepted by plaintiff. After the money became due on the contract, Taylor demanded payment on the order, which was refused. Young afterward served a notice on plaintiff countermanding the order. Plaintiff thereupon brought this action of interpleader against Young and Taylor. Taylor answered setting up the above facts, and that at

the time of his demand, Young had not countermanded the order, and asked judgment for the amount of the order. Plaintiff demurred to the claim. And it was held that the answer set up a good defense to the complaint. The drawing and acceptance of the order constituted an assignment of the sum expressed therein, and, when the plaintiff accepted said order and promised to pay the amount, it became liable. The court held that the facts stated and admitted by the demurrer were sufficient to entitle the defendant to judgment, and that an action of interpleader would not lie.

In American Telegraph, etc., Co. v. Day, 52 Super. 128, it was held that, where a corporation accepts a surrender of certain certificates of its stock, and issued new ones, under an alleged forged power of attorney from the owner, and such owner brings an action against the company to compel it to deliver the surrendered certificates to him, to pay the dividends to him, and to recognize him as the owner, the company cannot maintain an action of interpleader, or of that nature' against such owner, and the persons who procured, and who hold the new certificates, to compel the owner of the surrendered certificates to litigate his claim with the other defendants. The company's duty not to issue new certificates without authority of the owner of the old certificates was absolute, and the alleged perplexity as to the ownership has, therefore, not arisen without its fault, but from an act done voluntarily and advisedly by itself.

Multiplicity of actions will not, of itself, constitute an equity on which to base an equitable action in the nature of a bill of peace or interpleader. It is necessary that the anticipated issues between the plaintiff in the equity action and the various defendants should be ad idem. Id.

In Sulzbacher v. National Shoe & Leather Bank, 52 Super. 269, the following facts existed: After the deposit in bank of a sum of money by an assignee for the benefit of creditors, the assignment was set aside as fraudulent, the assignee and another appointed receivers of the property, the assignee thereupon drew his check in favor of the receivers for the balance of the deposit, payment thereof was refused by the bank, and an action brought against it by the receivers. An action was also pending against the bank for the deposit by other creditors, who claimed the fund under an attachment. And it was held that the bank was not in danger of being compelled to pay twice, which is the equitable foundation of a right to have rival claimants intervene, but that the nature of the controversy was such that the use of ordinary diligence would enable the bank to learn of facts which would make it clear to whom payment should be made; and that a motion to require the claimants to interplead should, for this reason, be denied.

In Price v. Holman, 22 W. Dig. 475, a trust had been declared in

favor of plaintiff in a bond and mortgage held by executors, who were ready to pay the amount, when several attorneys gave them notice that they claimed a lien on this fund for services. The executors thereupon made a motion to be allowed to pay the money into court for the benefit of plaintiff and the attorneys. And it was held that an order of interpleader should be entered, and that, upon paying the fund into court, the executors were entitled to be discharged. An appeal from this decision was dismissed without opinion, and reported in 101 N. Y. 683.

In Snyder v. Bliss, 19 W. Dig. 304, it was held that a sheriff holding attachments against property involved in an action of interpleader, has no interest in the subject-matter of, and is not a necessary party to, such action.

An attachment creditor, as he is not in a position to assail the title of an assignee of his debtor to chose in action assigned prior to the attachment, cannot be substituted as defendant on motion in an action to enforce such claim. Venable v. N. Y. Bowery Fire Ins. Co. 49 Super. 481.

*Part of claim.*—In Progressive Handlanger Union v. The German Sav. Bank, 23 Abb. N. C. 42, it was held that an application by a savings bank to compel an adverse claimant of a deposit to interplead with the depositor, under § 259, Chap. 439, Laws of 1882, may be granted, though he does not claim the whole of the deposit. This section contemplated that an action at law may be brought by a person in whose name the account with the bank stands, and then that a third person may claim the deposit as a fund equitably belonging to himself, and that in such case, the section should be applicable.

The rule is that an action for interpleader will not lie where there is a dispute as to the amount due from the plaintiff. VanZandt v. VanZandt, 17 N. Y. C. P. 448. This rule cannot be invoked, where the plaintiff admits that the whole amount of the claimant's share of the rents and profits is due from him, but avers that he cannot safely pay the whole of such rents and profits to either of the claimants. Id.

Where there are several claimants to parts of the fund, a bill of interpleader will lie to compel the parties to ascertain their shares and settle their priorities. Id. The case of Railroad Company v. Arthur, *ante*, is not opposed to this view. In that case it was held, that the amount due from a plaintiff cannot be the subject of controversy in an action of interpleader, and that the action can only be maintained, where the plaintiff admits liabilities for the full amounts claimed to one or other of the claimants. The plaintiff in this case had purchased goods of one of the defendants at an agreed price, but claimed to be entitled to deduct from that price a certain sum for transportation. This claim the vendee disputed, and the court held that the action could not be maintained. But this case is not in point, where the

plaintiff does not dispute the amount due, but admits that he owes it to one or the other of the defendants, and is unable to determine which. In such case it would be unjust to compel the plaintiff to determine between the rival claimants.

But the plaintiff must offer to bring the amount of the rents and profits into court. VanZandt v. VanZandt, *ante;* Atkinson v. Manks, 1 Cow. 704; Vosburgh v. Huntington, 15 Abb. 254.

The fact that the sum which the plaintiff is willing to pay is not the sum which the defendant claims, is fatal to the maintenance of an action of interpleader. N. E. Mut. L. Ins. Co. v. Odell, 50 Hun, 279; B. & O. R. R. Co. v. Arthur, *ante.* In the latter case, the principle is distinctly enunciated that, in an action of interpleader, the amount due from a plaintiff cannot be the subject of controversy; and this seems to be simply restating a rule which appears always to have prevailed.

Nor is the case, because the defendant claims more than the plaintiff admits to be due, thereby turned into an action in the nature of an interpleader. N. E. Mut. L. Ins. Co. v. Odell, *ante.* The distinction between strict actions of interpleader and actions in the nature of interpleader is simply this: In strict actions of interpleader, legal rights only are enforced; but in actions in the nature of interpleader, equitable relief in addition is sometimes given. Id.

Acording to the settled doctrine of equity, a party acknowledging himself a debtor, may, when subjected to a double demand for payment, have relief on showing that there is a question to be tried and that he is ignorant which claimant has the better right. B. & O. R. R. Co. v. Arthur, *ante.* But where the sum admitted to be due is not the sum for which the action is brought, the amount due cannot be the subject of controversy in an interpleader suit; and this difference between the debt claim and the sum which the party is willing to pay, presents an insuperable objection to its prosecution; for as to so much, the title or right of payment is not admitted to be in either claimant. The action can only be maintained when the plaintiff admits liability for the full amount claimed, to one or the other of the claimants. Id.

The plaintiff in such an action must also show that there is a question as between the claimants, and that he will incur hazard in paying to either party. Id.

The mere pretext of a conflicting claim is not enough to show that the plaintiff is in any danger of loss from an inability to determine to whom the debt should be paid. Where the relation between the plaintiff and one of the defendants is the ordinary one of vendor and vendee, it is a sufficient answer that no claim of right in the co-defendant is shown, as the plaintiff might interplead for, and by its allegations bring in question, the amount due to either party. A debtor cannot,

in this summary way, discharge a creditor with partial payment or prevent him from enjoying the fruits of his bargain. Id.

Where a person commences an action to recover a sum of money claimed to be due from the defendant, and two other persons also claim the same sum adversely to the plaintiff and to each other, and one of them claims only a portion of such sum, the remedy of the defendant, who makes no claim to the money, is by an action in the nature of an interpleader, and not by a motion under § 820 of the Code, to substitute the two other claimants as defendants in the action brought against him. N. E. Mut. L. Ins. Co. *v.* Keller, 20 W. Dig. 482; 7 N. Y. C. P. 109.

The case is not covered by the strict letter of § 820, because the assignee of the deceased policy holder did not claim or assert a demand for the same debt for which the action was brought. Even though this section will bear a construction that will admit the bringing in of both these claimants as defendants in that action, nevertheless the facts in the case present a different contest than that contemplated by the section. Id. There is not only a contest between the plaintiff, the widow, and these two claimants, but one between the claimants themselves, which must also be litigated before the rights of all the parties can be fully determined; such contest cannot be carried on under § 820, and hence the rights of all the parties as to the money cannot, in a contingency which may arise, be disposed of in the action brought by the defendant.

It is a general rule that an agent cannot defend against the action of his principal by setting up the title of others, so long as he retains the property. McKay *v.* Draper, 27 N. Y. 256. If he choose to take the responsibility of delivering the property to a third person who claims it, and such person has a legal right to the property, he may do so and show this in defense. Id. But in a proper case, an action of interpleader can be maintained. And the Code has provided a more simple remedy than an action of interpleader, by which the agent in such case, after the action was commenced and before answer, could have applied to the court for an order to substitute the claimant in his place, and discharge him from liability on depositing the money in court. Upon such application, the court, in its discretion, can make such order.

*Distinct claims.*—In Bassett *v.* Leslie, Supm. Ct. June 6, 1890, it was held that the theory upon which bills of interpleader can be maintained, is that the plaintiff owes a debt of a conceded sum to one of two or more claimants, but to which he cannot tell, and if he owes this sum to one claimant, the others have of necessity no claim upon him. Such action will not lie where the defendants present entirely distinct claims arising upon different instruments, and it does not necessarily

appear that, if plaintiff is liable to one, he is not liable to the other defendant. This case went up on appeal to the court of appeals.

To entitle the plaintiff to file a bill of interpleader, it must appear that two or more persons severally claim the same thing under different titles or separate interests from another person, and that the plaintiff, not claiming any title or interest therein himself, and not knowing to which of the claimants he ought of right to render the debt due or the duty claimed, or to deliver the property in his custody, is either molested by action or actions brought against him, or fears that he may suffer injuries from the conflicting claims of the parties. D., L. & W. R. R. Co. *v.* Corwith, Supm. Ct. Special Term, May 14, 1889. In this case the defendant brought an action against the plaintiff for the conversion of certain lead for which there were other claimants. The company thereupon brought this action to compel the several claimants to interplead. And it was held that the defendant, in an action for the conversion, cannot maintain an action to interplead the plaintiff with other claimants of the property, where it does not appear that such other claimants allege that they are entitled to a sum of money from the property, or that they have sued for its conversion; and that, before the plaintiff can be enjoined from prosecuting his action for conversion brought in another state, defendant must admit the indebtedness due and pay the amount claimed in that action into court.

In the case of Bassett *v.* Leslie, Ct. of Ap., Oct. 1890, the plaintiff, who had purchased certain goods of Alcock & Co., arranged with American Ex. Bank to give its acceptance for the price, and gave their own acceptance. The bank assigned plaintiff's acceptance to defendant, and failed before its own acceptance matured. Actions were brought by Alcock & Co. for the goods sold, and by defendant upon the acceptance; the plaintiff thereupon brought this action of interpleader. And it was held that, though Alcock & Co., and defendant claim the same amount of the plaintiff, the one claims it for goods sold, and the other upon a draft, and it was, therefore, not a case for interpleader.

If the two defendants were both claiming the money due upon the draft, or both claiming the money due for the price of the goods, the case would be different. But in the present case, the payment of the one would be no defense to an action for the other.

In Fulton Bank *v.* Chase, reported above, the claims of the various parties against the plaintiff were separate and distinct, each depended on its own circumstances, and they had no inherent connection with each other. The plaintiff sold collaterals placed with it to secure a loan, realizing $3,157 more than was due on the loan. Various parties who claimed portions of the collaterals brought their several actions

against plaintiff for conversion.    The debtor's executors thereupon
notified plaintiff that they claimed this surplus.    And it was held that.
an action of interpleader would not lie.

In Shipman v. Scott, 14 Daly, 233; 12 N. Y. C. P. 109, an action was.
brought by plaintiff to recover a broker's commission amounting to
$710 for negotiating the sale of a piece of real estate formerly owned
by defendant.    The defendant has not answered, but in an affidavit he
admits his liability to pay such amount, averring therein that another
broker claimed such commission for procuring such sale.    An order of
interpleader was thereupon granted directing defendant to pay said
sum into court, and substituting the claimant as defendant.    From
this order an appeal was taken.    And it was held that, in case of a sale
of a piece of property in which each of two brokers claim brokerage,
to have negotiated the sale, and induced the purchaser to sign a con-
tract, and one brings an action to recover his commission, it is proper
for the court to make an order of interpleader substituting the other
broker as defendant.

If the contracts of sale claimed by each to have been negotiated are
different agreements, then in determining which was the procuring
cause, there will necessarily have to be determined which contract the
purchaser as a matter of fact executed.    If they are essentially dif-
ferent and inconsistent, the purchaser cannot have entered into both,
and, under the circumstances, the determination to which contract he
became a party and followed in making a purchase, will in itself deter-
mine which broker was the procuring cause.

In Beer v. Benner, 2 N. Y. C. P. 262, an action was originally brought.
against one Diehl, for commissions claimed to be due plaintiff for his.
services as broker in the sale of certain real property situate in the.
city of New York.    The present defendant claimed that he, and not,
the plaintiff, was the broker who sold the property; and that what-
ever services the plaintiff had rendered were rendered by him as the
defendant's servant, and not as the broker of Diehl.    It was held that.
this was a proper case for interpleading the defendant, as he alleged.
himself to be the actual contractor with the owner of the real estate.
The owner therefore stood as a mere stake-holder of a fund which be-
longed to one of two claimants, and was properly relieved of the suit.
on paying the money into court and substituting Benner as defendant.

*Payment or tender into court.*—In Sibley v. The Equitable L. Ass. Soc.
56 Super. 274, the complaint claimed the principal sum with interest.
thereon from a certain date to be due from the defendant upon a con-
tract made by it.    The defendant answered admitting the sum to be
due to some person, but alleging that other persons claimed the sum.
to be payable to them; that it was ignorant of the rights and interests
of the claimants in said sum and of their equities in respect thereto,

and had no means of ascertaining the same; that since the amount had become due, it had not been able to make payments to any one with safety, and that it was ready and willing, and had ever since the amount became due been ready and willing, to pay the same to the persons rightfully entitled to receive it; and praying that it might be allowed to pay the principal sum into court, and that it be discharged from all liabilities thereon, and that the claimants be restrained from prosecuting any action against it, on the policy of insurance or anything connected therewith. On the complaint, answers and an affidavit, the defendant moved for the relief asked for it in its answer, and the court made an order to that effect, without imposing costs or requiring the interest on the principal sum to be brought into court. And it was held that the court had no power to discharge the defendant without payment of the interest as well as principal; and that, if it had an equitable defense to the claim for interest, it must remain a party to the action and set it forth by answer.

In The Pelham Hod Elevating Co. v. Bageley, N. Y. City Ct. Dec. 26, 1890, an action, in form of replevin, was begun to recover an engine and boiler and for the detention thereof. The property was taken into the custody of the sheriff, but the defendant failed to counter bond, and no claim was made to the property by any third person in the manner prescribed by § 1709 of the Code. The defendant subsequently applied for an order substituting a receiver as defendant, in the place of the defendant, on the ground that he claimed title to the property. The application was granted, and from this order the plaintiff appealed. And it was held that the defendant was not entitled to an order of interpleader under § 820 of the Code, because he did not tender into court the property claimed. He had lost the right of possession and could not deliver the property. The plaintiff became entitled to possession under the provisions of the Code and the Code could make no different direction concerning it. Id. The authorities are in accord with this view. Edgerton v. Ross, 6 Abb. 189; Vosburg v. Huntington, 15 Id. 254; Lynch v. St. John, 56 How. 144. § 820 of the Code must be construed in harmony with the provisions of the Code relating to the action of replevin, so that all may have effect without infringing upon or impairing the purpose of either provision.

*Indifferent.*—Where the holder of property, to which claims are made by different parties, does not stand indifferent between them, but has voluntarily assumed the position of a bailee to one, to the detriment of the others, he cannot maintain an action of interpleader. Cromuell v. Amer. Loan & Trust Co., 57 Hun, 149.

In this case, one of the plaintiffs was the assignee of judgment upon

which execution was issued to the sheriff; and for the purpose of subjecting certain shares of stock to a levy under the executions, the plaintiffs accepted the custody of the stock and notified the sheriff to make his levy. This was done for the purpose of anticipating other claims against the stock. And it was held that the plaintiffs did not stand indifferent between the claimants, but had been assisting the one to the detriment of the other. They do not stand in the relation of persons who have come into the possession of property innocently and have been unexpectedly assailed without instrumentality of theirs by different claimants. They have assumed a contractual relation to the sheriff, have agreed to hold the stock for him; have alleged that the sheriff has made a valid levy upon the stock, and that they are holding the same as receiptors. They are therefore bailees thereof, and where such a relation exists, such bailees cannot compel other parties to come into court and litigate their claims with the bailor.

In Friedman *v.* Platt, 51 Hun, 639, the defendants were the custodians of a certain fund which was demanded by two separate parties, and stood indifferent as between them. There was no evidence of any collusion between the defendants and either claimant. And it was held that an order of interpleader substituting one of the claimants in the place of defendants, was properly made.

*Stakeholder.*—To maintain an action of interpleader, it is necessary to allege and show that two or more persons have preferred a claim against the plaintiff; that they claimed the same thing, whether a debt or a duty; that the plaintiff has no beneficial interest in anything claimed, and that it cannot be determined without hazard to himself to which of the two defendants the money or thing belongs. There must also be an offer to bring the money or thing into court. Bassett *v.* Leslie, Ct. of Ap. Oct. 28, 1890; M. & H. R. R. R. Co. *v.* Clute, *ante;* Dorn *v.* Fox, *ante;* B. & O. R. R. Co. *v.* Arthur, *ante.*

Such an action always supposes that the plaintiff is a mere stakeholder for one or the other of the defendants who claim the stake, and the case must be such that he can pay or deposit the money or property into court and be absolutely discharged from all liability to either of the defendants, and thus pass utterly out of the controversy, leaving it to proceed between the several claimants; and an action of interpleader cannot be sustained where, from the complaint itself, it appears that one of the complainants is clearly entitled to the debt or thing claimed to the exclusion of the other. M. & H. R. R. R. Co. *v.* Clute, *ante;* Bassett *v.* Leslie, *ante.*

Where a stakeholder is allowed to drop out of the contest, upon the theory that it was ready to pay the rightful claimant, the payment of the money into court does not in any way better or prejudice the position of either party against the other interpleaded party. The

party that succeeds must make a case that would have entitled him to succeed against the stakeholder. Ireland *v.* Ireland, 42 Hun, 212; Vosburgh *v.* Huntington, 15 Abb. 254; McKay *v.* Draper, 27 N. Y. 260; Ballou *v.* Gile, 50 Wis. 619.

*Laches.*—In The United States Land & Investment Co. *v.* Bussey, 54 Hun, 636, it was held that a defendant is bound to move with diligence if he desires to withdraw himself from the contest upon the ground of no interest. And where a defendant postponed making his motion for an order of interpleader from January until June, without reasonable excuse, his application was denied.

The fact that the claimant was a non-resident at the time of the commencement of the action, will not aid the defendant, where such non-resident has returned long prior to the motion to interplead; nor will a written demand, in such case, served by the claimant upon the defendant just prior to the motion, sustain the application, where it is apparent that this paper came into existence for the purpose of the motion, and conveys no information to the defendant of any claim of which he had not been fully aware at the time of the commencement of the action.

*When motion made.*—Although a motion for an interpleader must ordinarily be made before answer, yet, in an action against the savings bank for a deposit, such a motion may be made subsequently, under the provisions of § 259, Chapter 409, Laws of 1882. Payson *v.* Savings Bank, N. Y. Daily Reg., Nov. 24, 1883. See Section 820 of the Code.

*Ground of refusal.*—In Flanery *v.* Emigrant Ind. Sav. Bank, 23 Abb. N. C. 40, the plaintiff sued the defendant to recover moneys deposited with it by one Margaret Kilfoyle in her own name. The depositor is now deceased, and her administrator claimed the fund. The bank applied to interplead the plaintiff and the administrator. And it was held that, where the party who is ostensibly a stranger to the contract between the depositor and the bank, brings an action claiming to be the actual depositor, the bank, on its application for such purpose, should be relieved, and the rival claimants compelled to litigate the title to the deposit between themselves. And the fact that the plaintiff in an action against the bank could give evidence of personal transactions with the deceased, which she would not be permitted to testify to as against the administrator, is no ground for refusing the interpleader. If the motion was denied and it was sued by the administrator, the bank would suffer the hardship; and as between the bank and the plaintiff, the former is the innocent party and should not suffer.

*Award.*—In Barnes *v.* Mayor, *ante,* the fund in controversy was created by an award made for the value of the plaintiff's interest in land taken for certain street openings in the city of New York. After its creation, a claimant served a notice upon the department of finance

claiming an interest in the award to the extent of the sum of $3,000, beside the interest which had accrued upon it, by virtue of a mortgage held by him against the property. The claim was made without collusion with the city; and the city claimed no right or title to the money, but held it solely for the purpose of paying the award.

The application was brought within the terms of § 820 of the Code, which is simply remedial in its nature. This section provides an inexpensive and speedy method for the litigation and settlement of controversies of this nature, and it should not be either so restricted or clogged, by technical qualifications, as to deprive it of any of the advantages intended to be secured by it under a just and liberal construction and application of it. The fact that the mortgagee has not claimed the entire fund is not an important consideration. He does claim a part of the identical money claimed by the plaintiff. Since this provision of the section has contemplated such a controversy, there is no reason whatever in such a construction as will require the contesting claimants to settle their rights, when they respectively relate to the whole of the fund, and which should be held to deny such a disposition, where the adverse claim only included a portion of it.

What the Code intends by demand for the same debt, is such a demand as is entitled to be satisfied or discharged out of the fund.

This principle of the law, as it is now embodied in this section of the Code, was so applied to a controversy, dependent upon a partial claim, in Canfield *v.* Morgan, Hopk. Ch. 224, and in Thompson *v.* Ebbitts, Id. 272, and a like conclusion was followed in Yates *v.* Tisdale, 3 Edw. Ch. 71. It was applied to controversies relating to awards of this nature, by the court of appeals in the unreported case of Spears *v.* Mayor, etc. See 87 N. Y. 359. In this case, it was said in the opinion of the court, that the city would be justified to pay the person named in the award, unless it had received notice of an adverse claim. After such notice, and certainly after suit commenced for the award by a person not named in the report as entitled thereto, the city would pay to the person named therein at its peril. Such construction of the statute can lead to no serious embarrassment of the city in paying such award, because, in the case of conflicting claims known to it, it can compel an interpleader and thus relieve itself from embarrassment or double responsibility.

It was held, in Pollock *v.* Morris, 51 Super. 112, that, in an action against the city of New York for an award made to unknown owners, in a proceeding for widening the Boston road, in the 23rd ward, under § 184 of the act of 1813 re-enacted as § 993 of the New York consolidated act, a rival claimant may be substituted as defendant in place of the city, and the latter discharged from all liability on paying the money into court.

*Mortgages.*—In VanLoan v. Squires, the plaintiff brought an action against the said defendant and others to foreclose a mortgage. All the defendants made default, and a sale of the premises was had, which was subsequently set aside, and Mary E. McKinley and M. Louise Jarvis were made new defendants. Simon Stern moved to be substituted as plaintiff on the ground that he was the assignee of the bond and mortgage from the plaintiff. M. Louise Jarvis also claimed to be the owner of the bond and mortgage, contending that she purchased the same from the plaintiff. Mary E. McKinley, the present owner of the equity of redemption, also moved to be allowed to pay into court the sum due on the bond and mortgage.

As Mr. Stern and Mrs Jarvis are the only persons entitled to the fund, and purpose contesting each other's right thereto it would be inequitable to compel the owner of the equity, who is ready and willing to pay what is claimed in the complaint, to either tender to one who may not be authorized or entitled to receive the money, or be subjected to further interest, or to costs of further proceedings to determine the ownership of the fund, in which matter she is not interested. § 820 of the Code, together with the general equitable power vested in the court, is sufficient to warrant, in a proper case, the granting of leave to pay into court moneys due on a mortgage, the ownership of which is claimed by two persons, who desire to proceed in the action and litigate their rights.

In Caulkins v. Bolton, 31 Hun, 458, an action of interpleader was brought by a mortgagor to determine to whom he may pay the mortgage. The facts were as follows: Lucinda Comstock, executrix of Zara Comstock, deceased, loaned money of the estate to the plaintiff and took this bond and mortgage in her own name, not as executrix. She was, under the will, entitled to the use of all the property of the testator during her natural life for her support, and to use any portion of the principal, if necessary, for her support, and of this she was to be the sole judge. She died, and letters of administration on her estate were issued to the defendant Gray. Letters of administration, with the will annexed *de bonis non* of the estate of Zara Comstock, were issued to the defendants, Bolton and Scriber. The bond and mortgage are in their possession, and they claim the payment. Gray also claims the payment. The mortgagor then brought this action to interplead. And it was held that the bill of interpleader was properly brought, as the mortgagor ought not to be required to pay Gray without receiving the bond and mortgage, nor to pay Bolton and Scriber, when the administrator of the mortgagee claimed the debt.

*Vendor and vendee.*—In Johnston v. Lewis, 4 Abb. N. S. 450, in an action upon a note, the defendant shows that the note was given for the price of goods sold to the defendant, and that a third person had

sued defendant for the proceeds of the same sale, alleging that he sold the goods to the defendant in his own right. The plaintiff claimed that such third person, in selling the goods, had acted as his agent. The defendant moved for an order substituting such third party in his place as defendant. And it was held that the case was a proper one for an order that, upon defendants paying the amount of the note and interest into court, such third person should be substituted as defendant, and the present defendant be discharged.

In the case of Trigg *v.* Hitz, *ante*, there was no dispute as to the person from whom the goods were purchased. The vendor in that case, though he had fraudulently come into possession of the goods, had a title sufficient to transfer the same to a *bona fide* purchaser, and it was held that the vendees were in such a position that they could not dispute the title of their vendor.

But in the present case, two persons claimed to have been the vendor, and each claims to have been not only the owner, but the seller of the goods. The defendant, it is true, cannot dispute the title of his vendor; but the question to be determined is, who was the vendor in this instance, and which of the contestants is entitled to the amount of the note in suit.

In such case, the defendant should be relieved from embarrassment, and not be vexed with the claims of two adverse parties, or annoyed by two suits for the same debt, when he is ready to respond to the person having the legal claim to the money; and, having expressed his readiness to pay the amount to the court, he should be allowed to do so, leaving the contestants to settle the controversy between themselves as to which is entitled to the amount.

It was held, in Tynan *v.* Cadenas, 3 How. N. S. 78, that, when two persons, each claiming to be entitled to the price of goods, sold to the defendant, brought separate actions against him, a motion to interplead the plaintiff in the two suits was properly denied. See M. & B. R. R. Co. *v.* Arthur, *ante ;* Sherman *v.* Partridge, 4 Duer, 646; Trigg *v.* Hitz, *ante.*

In Tynan *v.* Cadenas, 7 N. Y. C. P. 305, a vendor brought an action against the vendee for the reasonable value of goods alleged to have been sold by him to such vendee; and a third party, who claimed to have sold the same goods to the vendee, brought an action against him to recover the alleged agreed price thereof. And it was held that the two vendors could not be required to interplead on the motion of the vendee, and that the motion must be denied, with costs, on the authority of Sherman *v.* Partridge, 4 Duer, 646; 1 Abb. 256; 11 How. 154; and Trigg *v.* Hitz, *ante.*

In the former case, it was held that, in an action for the recovery of a debt arising from a sale of goods, the vendee cannot require his

vendor to interplead with another person who claims to be the owner of the goods.

In the latter case, the supreme court held that an action of interpleader cannot be maintained by the vendee of chattels to settle the conflicting demand of the vendor in the third person, who claims the purchase money, on the ground that the vendor has obtained the goods from him by fraud.

*New York city court. Procedure.*—§ 820 fully applies to the city court of New York. Smith v. Emigrant Ind. Sav. Bank, *ante.* Where the motion to this court is proper and is granted, it must necessarily allow the case to proceed further in this court; for the court cannot, without a trial, relinquish or throw out a cause properly begun and pending, or decline its continuance, Alexander v. Bennett, 60 N. Y. 204, and upon the granting of the interpleader, the city court must have implied power to try the cause thereafter in the manner according to law; else, after the payment of the money into court under the order of interpleader, plaintiff would be tied up in the suspended action and prevented from ever trying his suit; and should he then sue in another court, he could there be met with a plea of pendency of former action, or the bank would have to bring elsewhere an equity interpleader and pay the amount into court a second time on plaintiff's refusal to discontinue the action. Id. In this case, it was held, therefore, that interpleader cases should proceed in the city court after the granting of the motion to interplead.

*District court. Procedure.*—The district court had power, at the date of the order of interpleader in this action, April 3, 1882, to make such an order. Prior to the Code of Civil Procedure the district courts had such power. Dreyer v. Rauch, 10 Abb. N. S. 344; Beer v. Benner, *ante.* There are no provisions of the present Code which supersede the old practice as to interpleader in district courts.

It is settled by the decision of the court of common pleas in Rauch v. Dreyer, 4 Daly, 434, and Beer v. Bender, 2 N. Y. C. P. 362, that the statutory interpleader, which is not in the nature of a suit in equity, but a remedy designed for use in common law courts, is a measure of relief to which suitors in a district court in the city of New York may resort. McElroy v. Baer, 9 N. Y. C. P. 133.

The borrowing only the relief and omitting to provide a way by which that relief could be attained, have thrown upon the courts of this state the necessity of framing for themselves a system of practice that will make the statutory interpleader effectual, McElroy v. Baer, 9 N. Y. C. P. 133. One of the first efforts in that direction was made in the case of Van Buskirk v. Roy, 8 How. 425, in which the court directed that the order should provide that, if the party interpleaded did not appear and defend the action within twenty days after the ser-

vice upon him of a copy of the order of interpleader, the money in court should be paid to the plaintiff. The Code nowhere provided for the proceedings, but they were adopted because in no other way could effect be given to the intent of the legislature in creating the remedy of an interpleader in a common law action. Id.

In Lawrence *v.* Wilson, 8 Hun, 593, the court held that, as the Code prescribes no mode of proceeding under this section, the practice under it should be, as far as practicable, that adopted by the courts of equity in case of interpleader in analogous cases. It was suggested that the practice be such as is recommended by Moak's Van Santvoord's pleadings, page 358.

In the district courts, after the order of interpleader is made, a copy of the order and a copy of the complaint should be served upon the party brought in by the interpleader. The order should require him to appear and answer the complaint in the same time that a defendant is required to answer a summons, and should provide that the money in court shall be paid to the plaintiff, in case of the failure to appear in answer to the party who is interpleaded. If the party appear and answer, the issue raised may be tried by the court, unless a jury is demanded at the joinder of issue. Upon the entry of judgment, the money must be paid to the prevailing party, unless an undertaking sufficient to stay proceedings is given, and cause should be awarded against the losing party. The common debtor is discharged from all liability, and has no interest in, or concern with, the litigation that may follow the payment by him of the money into court.

*Pleadings.*—The provision in § 122 of the former Code was designed to give a new remedy as a substitute for, and concurrent with, a bill of interpleader in equity. Wilson *v.* Lawrence, 8 Hun, 593; McKay *v.* Draper, *ante;* Patterson *v.* Perry, 14 How. 505. The Code prescribes no mode of procedure under this section, and the practice under it should be, as far as practicable, that adopted by the courts of equity in suits of interpleader in analogous cases. Id.

The order usually made, upon bills of interpleader, after both parties have appeared and answered, adjudges that the plaintiff in such bill be paid his costs, and, upon depositing the money in dispute with the clerk, be dismissed from the further prosecution of the action, and that the defendants interplead, settle and adjust their claim and demands in respect to such funds as between themselves. Id.

The plaintiff should obtain an order of the court, allowing him to make a supplemental complaint alleging the facts occurring after the commencement of said action, the making of the order of substitution and the dismissal of the stake-holder as a defendant, the substitution of the claimant in his place, and the deposit of the amount due upon the claim with the clerk, with such other appropriate allegations in

relation to the defendant as the plaintiff would be required to prove to maintain the action against him. Id.

The defendant is entitled to have a complaint served upon him, containing proper allegations relating to him or his claims, which he may controvert in his answer. Id. Of this right the defendant is not, and cannot be, deprived by an order of the court, certainly not by an *ex parte* order. He is entitled to have his rights presented, contested and asserted in appropriate pleadings. Id. But if the plaintiff fails to serve a supplemental complaint, and proceeds to trial upon the original complaint, the substituted defendant may move to dismiss the same, on the ground that, as to him, it does not state facts sufficient to constitute a cause of action. Id.

*Jury trial.*—As now decided by the court of appeals, under said § 820 of the Code, after the new defendant is substituted and the amount or thing is deposited with the court or in its custody, the controversy between the plaintiff and the former defendant is at an end, and the action thereupon becomes an equity suit between the plaintiff and the new defendant, without any right to trial by jury, and in which a decree must be made. Clark *v.* Mosher, 107 N. Y. 118.

In this case, plaintiff brought this action originally against the Phœnix Mut. L. Ins. Co., upon a policy of life insurance issued by the company. The defendant, upon an affidavit showing that one Mosher claimed to own the policy and to be entitled to the amount due thereon, moved under § 820 of the Code, that said Mosher be substituted as defendant, and that it be discharged on payment of the money into court. The motion was granted, and Mosher died pending the litigation; and his administrator, the present defendant, was substituted. When the case was called for trial, the defendant's counsel claimed that it was an equity case. The court directed a jury to be empannelled, and submitted to them one question of fact which they decided in plaintiff's favor. The court set aside the verdict on motion of defendant's counsel, found the fact contrary to such verdict, and directed judgment for defendant. Plaintiff moved to set aside the judgment on the ground that the action was one of law triable by a jury.

The court at general term held that the action was one at law, for the recovery of money only in which the plaintiff was entitled to a trial by jury; that the trial judge consequently had no power to disregard the verdict and substitute his own findings, and that the judgment was irregular.

But the court of appeals held that the action was of an equitable nature, and triable by the court. The plaintiff had no right of action at law against the defendant, and did not seek to recover any money from him. The money in controversy was in court, having been paid into court by the insurance company, under an order made on the ap-

plication of the company pursuant to § 820 of the Code. Neither party had any right of action at law against the other, but by this equitable proceeding, authorized by the Code, the insurance company, against whom both parties claimed a legal cause of action, was discharged, and they were brought together to litigate the question which of them had the better right to the fund in controversy. No right to trial by jury ever existed in such a case. Id.

*Costs.*—The action of interpleader is of equitable origin, and the remedy provided by the Code is merely concurrent. Cronin *v.* Cronin, 9 N. Y. C. P. 137; 3 How. N. S. 184; Beck *v.* Stephani, 9 How. 193; Chamberlain *v.* O'Conner, 1 E. D. Smith, 665; 8 How. 45; Patterson *v.* Perry, 14 Id. 505. The principles which govern the remedy, either in equity or under the Code, are alike, and the rule formerly prevailing as to costs should, as far as practicable, be applied to the present practice. Cronin *v.* Cronin, *ante.* The legislature did not intend, even under the interpleader allowed by the Code, that a defendant whose defense was meritorious, and who succeeded in it to the extent of prevailing in the action equally with the plaintiff, should be arbitrarily mulcted with costs, as of course, for presenting a claim fully as just as that made by his adversaries. Such an interpretation would be harsh and oppressive, and tend to establish an immutable rule which might in some case work great injustice. The intention was to avoid this possible result by leaving the question of costs in such actions to the discretion of the court, so that they might be allowed or withheld, according to equitable principles, and in furtherance of justice. Id.

In this case, money was deposited in a savings bank, to the credit of a husband and his wife, or either, and the wife, claiming the entire deposit, brought suit against the bank therefor. The bank obtained an order interpleading and substituting the husband as defendant, in its place, on the ground that he also claimed the same fund. Both the husband and the wife established, on the trial, title to a substantial part of the fund in dispute. And it was held that the award of costs rested entirely in the discretion of the court, and that neither party should recover costs against the other out of the fund, but that the disbursements of each party should be taxed and charged upon the fund.